UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SCOTT DOLEMBA,<br>on behalf of himself and a class,<br><br>   Plaintiff,<br><br>  v.<br><br>CITIZENS INFORMATION,<br>ASSOCIATES, LLC;<br>KYLE G. PRALL;<br>RYAN H. RUSSELL;<br>STAR NINE VENTURES, INC.;<br>d/b/a STAR NINE MARKETING; and<br>JOHN DOES 1-10,<br><br>   Defendants. | Case No. 1:13-cv-6939<br><br>Judge Kendall<br><br>Magistrate Judge Cole |

## DEFENDANT CITIZENS INFORMATION ASSOCIATES, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION

Defendant Citizens Information Associates, LLC ("CIA") moves to compel individual arbitration of Plaintiff's claims and to stay this action pending the resolution of individual arbitration. When Plaintiff Scott Dolemba purchased the services from CIA, he agreed to pursue any disputes on an individual basis in arbitration. The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 - 16, requires Plaintiff to honor his agreement.

CIA is a Texas limited liability company that publishes arrest records and criminal statistics across the United States, including Illinois, on its websites bustedgrid.com and mugshotsonline.com. Many services are provided without charge, including its crime tips portal and sex offender registry. CIA offers paid services for monthly memberships to access its database of over 12 million arrest records and various other monitoring tools. In addition, CIA

1

allows individual arrestees to remove their records in certain circumstances. Any arrestee that can show that his charges were dismissed, sealed, expunged, or otherwise exonerated can have his image removed without charge. Those individuals who do not fit the above description, and have not been found guilty of a violent or sexual crime, can have their image removed for a fee.

Plaintiff, an individual, alleges that he paid $98.00 on September 12, 2013 for the service of removing his record. (Complaint – Class Action ("Comp."), Case: 1:13-cv-06939, ECM Doc #1, ¶31). As part of the removal process, Plaintiff is required to check a box acknowledging that he "agree[s] to the Busted Mugshots Terms & Conditions and Privacy Policy." (Prall Decl. ¶4, Ex. A hereto). The phrases "Terms & Conditions" and "Privacy Policy" both contain hyperlinks to the respective documents. (Prall Decl. ¶5). The Terms & Conditions ("Terms") are also viewable as a link at the bottom of every page on the website. (Prall Decl. ¶6). Without clicking on the agreement box, it is impossible for a user to consummate a transaction. (Prall Decl. ¶10). In fact, Plaintiff checked the box prior to initiating his transaction with CIA. (Prall Decl. ¶11).

> Section XVII.C of the Terms states, in relevant part:
>
> If there is a dispute between the parties arising out of or otherwise relating to these Terms and Conditions, the parties shall meet and negotiate in good faith to attempt to resolve the dispute. Arbitral Claims shall include, but are not limited to, contract and tort claims of all kinds, and all claims based on any federal, state or local law, statute, or regulation, excepting only claims under applicable worker's compensation law and unemployment insurance claims. If the parties are unable to resolve the dispute through direct negotiations, then, except as otherwise provided herein, either party may submit the issue to binding arbitration in accordance with the then-existing Commercial Arbitration Rules of the American Arbitration Association. . . .

(Prall Decl. ¶7, Sch. 1 at p. 5.)

In addition, the Terms state that the "arbitrator shall have no authority to award any punitive or exemplary damages; [or] certify a class action." (*Id*.) Further, the contract states in all capital letters: "THE PARTIES HEREBY WAIVE ANY RIGHTS THEY MAY HAVE TO TRIAL BY JURY IN REGARD TO ARBITRAL CLAIMS." (*Id*.)

On September 26, 2013, approximately two weeks after contracting with CIA for the service and agreeing to the Terms, Plaintiff filed this action alleging a violation of 18 U.S.C. §1961 ("RICO") based on alleged violations of Illinois's intimidation (or extortion) statute, 720 ILCS 5/12-6. Plaintiff further alleged violations of the Illinois Consumer Fraud Act ("ICFA"). The crux of Plaintiff's complaint is that Plaintiff was compelled to enter into its transaction with Defendant CIA against its will. (Comp. ¶ 33). However, pursuant to his agreement with CIA, Plaintiff's claims must be compelled to arbitration.

## I. Argument

The FAA requires that Plaintiff's claims be arbitrated. Plaintiff agreed to arbitrate all claims against CIA on an individual basis and, pursuant to the FAA, he should be compelled to do so.

### A. Plaintiff's Claims Should Be Compelled to Arbitration.

The Parties' arbitration agreement is governed by the FAA. The FAA applies to arbitration agreements governing transactions that involve "commerce." 9 U.S.C. § 1. Commerce is defined to include "commerce among the several States." *Id*.; *Citizen's Bank v. Alafabco, Inc.*, 539 U.S. 52 (2003) (holding that the reach of the FAA is co-extensive with a full exercise of Congress's Commerce Clause power). The agreement here involves a business transaction between Plaintiff, a purported resident of Illinois, and CIA, a Texas limited liability corporation with its principal place of business in Austin, Texas, for publication removal services. As Plaintiff alleged, both his viewing of the publication and his payment for the services were made "via interstate wire transmission." (Comp. ¶¶ 26, 28, 31-32). Thus, the agreement falls within the definition of "commerce" under the FAA.

Under the FAA, Plaintiff's claims should be directed to arbitration, provided that (1) the parties entered into a valid and enforceable agreement to arbitrate, and, if so, (2) whether the

present claims fall within the scope of that agreement. See 9 U.S.C. §§ 3 & 4; *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649 (1986). Here, arbitration must be compelled pursuant to the FAA.

### 1. **Plaintiff Agreed To Arbitrate Any Dispute With CIA.**

By enacting the FAA, Congress sought to guarantee that arbitration agreements be enforced as written and to prevent parties from avoiding their contractual obligations. "The legislative history of the [FAA] establishes that the purpose behind its passage was to ensure judicial enforcement of privately made agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985); see also 9 U.S.C. § 2. Under the FAA, an agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Federal policy strongly favors the enforcement of agreements to arbitrate, which is why the FAA calls for a "summary and speedy disposition of motions or petitions to enforce arbitration clauses." *Moses H. Cone Mem. Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 29 (1983). The U.S. Supreme Court has repeatedly affirmed the validity and enforcement of arbitration clauses. *American Express Co. v. Italian Colors Restaurant*, --- U.S. ---, 133 S. Ct. 2304 (2013); *CompuCredit Corp. v. Greenwood*, 565 U.S. ---, 132 S. Ct. 665 (2012); *AT&T Mobility LLC v. Concepcion*, 563 U.S. ---, 131 S. Ct. 1740 (2011).

There is a "heavy presumption of arbitrability" when the parties have committed themselves to arbitrate their disputes, see, e.g., *American Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 91 (4th Cir. 1996), and any doubts concerning "the scope of arbitrable issues" must be resolved "in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25. That includes terms that "specify with whom [the parties] choose to arbitrate their disputes," *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662, 683 (2010), and "the rules under

which that arbitration will be conducted," *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). That holds true for claims that allege a violation of a federal statute, unless the FAA's mandate has been "'overridden by a contrary congressional command.'" *CompuCredit Corp. v. Greenwood*, 565 U.S. ——, ——, 132 S.Ct. 665, 668–669, 181 L.Ed.2d 586 (2012) (quoting *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987)).

"In deciding whether the parties agreed to arbitrate a certain matter, federal courts generally should rely on state contract law governing the formation of contracts." *Crandall v. AT&T Mobility*, 2008 WL 2796752, *3 (S.D. Ill. 2008).

Under Illinois law, like any valid contract, a legitimate agreement to arbitrate requires an offer, an acceptance, and consideration. *Equistar Chemicals, LP v. Hartford Steam Boiler Inspection and Ins. Co. of Connecticut*, 883 N.E.2d 740 (Ill. App. Ct. 4th Dist. 2008). "A vendor, as master of the offer, may invite acceptance by conduct, and may propose limitations on the kind of conduct that constitutes acceptance. A buyer may accept by performing the acts the vendor proposes to treat as acceptance." *Hill, et al. v. Gateway 2000, Inc.*, 105 F.3d 1147, 1152 (7th Cir. 1997) (internal citations and quotations omitted) (enforcing arbitration clause included in terms sent to buyer in box in which computer was shipped). Further, it is a "well settled rule of law that when a party to a contract is able to read and has the opportunity to do so, he cannot thereafter be heard to say he was ignorant of its terms and conditions." *Bunge Corp. v. Williams,* 45 Ill.App.3d 359, 365 (Ill. Ct. App. 1977). The same rule applies whether the contract is in electronic form. *DeJohn v. The .TV Corp. Int'l,* 245 F.Supp.2d 913, 919 (N.D.Ill.2003).

On September 12, 2013, Plaintiff agreed to arbitrate disputes, such as these, with CIA by clicking the conspicuous "I Agree" button before purchasing his services. (Decl. Prall ¶11). If

5

Plaintiff did not wish to be bound by the Service Terms and Conditions, he was free to decline to purchase the services. (Decl. Prall ¶11). By accepting the Terms and purchasing the services, Plaintiff agreed to resolve any disputes in arbitration.

### 2. Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement.

Plaintiff's claims fall within the broad scope of the Arbitration Provision in the Terms. The Supreme Court has explained that the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). As such, if there is any reasonable construction that will effectuate the arbitration clause, a court should not deny arbitration under the FAA. *Kiefer Speciality Flooring, Inc.*, 174 F.3d at 909.

Here, Plaintiff expressly agreed to arbitrate any dispute arising out of the contract, any torts or "claims based on any federal, state or local law, statute or regulation." (Decl. Prall, Exhibit 1, Section XVII C). The nexus of Plaintiff's complaint is that he was damaged because he paid for services, which CIA provided, even though "he had no interest in doing business with" CIA. (Compl., ¶33). Any funds received by CIA were pursuant to the very service agreement containing the Arbitration Provision. Plaintiff's claims for violation of the federal RICO statute and the Illinois Consumer Fraud Act fall squarely within the arbitration agreement's provision for "claims based on any federal, state or local law, statute or regulation."

### B. The Class Action Waiver Contained in the CIA Agreement is Enforceable.

Because "arbitration is a matter of contract," *Howsam v. Dean Witter Reynolds Inc.*, 537 U.S. 79, 80 (2002), this Court should enforce the terms of the agreement as written and direct that the arbitration be conducted on an individual basis. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 53-54 (1995) (the FAA is designed to "ensure 'that private agreements

to arbitrate are enforced according to their terms'"). Plaintiff cannot argue that requiring him to submit to individual arbitration would render the arbitration clause unenforceable. The FAA makes arbitration agreements "enforceable to the same extent as other contracts," except in limited situations where state law may be applied to invalidate them without contravening the FAA. *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178 (3d Cir. 1999).

The Supreme Court recently held that, barring a "contrary congressional command" to preclude a waiver of class-action proceedings, enforcement of such arbitration clauses is required. See *CompuCredit*, 132 S. Ct. at 668-69. The Terms, as agreed to by Plaintiff, state in relevant part that "the arbitrator shall have no authority to … certify a class action." (Decl. Prall, ¶8, Schedule 1.) Therefore, the waiver of class actions in the arbitration clause is enforceable.

C. **The Court Should Stay This Action Until the Resolution of Individual Arbitration.**

When, as here, an agreement is within the scope of the FAA, a court has the power to enter an order compelling arbitration. See FAA, 9 U.S.C. § 4. Further, the FAA provides that a federal court "shall" stay proceedings when the matter is referable to arbitration. 9 U.S.C. § 3.4; See *Volkswagen Of America, Inc. v. Sud's Of Peoria, Inc.*, 474 F.3d 966, 971 (7th Cir. 2007). Accordingly, Defendant seeks an order compelling Plaintiff to individually arbitrate the claims asserted in the Complaint. Defendant further seeks an order staying this litigation until the resolution of the arbitration.

II. **Conclusion**

WHEREFORE, Defendant respectfully requests that this Court grant its Motion to Compel Individual Arbitration of Plaintiff's Claims and stay these proceedings pending resolution of the individual arbitration of Plaintiff's claims. Defendant also asks that this Court

stay Defendant's obligation to answer or otherwise respond to Plaintiff's Class Complaint up to and including twenty-eight days from the date of the Court's ruling on this Motion.

DATED: November 18, 2013      By:   */s/ Todd McLawhorn*
                                                 Todd L. McLawhorn
                                                 McLawhorn Law Offices, P.C.
                                                 407 S. Dearborn, Suite 1310
                                                 Chicago, IL 60605
                                                 Tel: (312) 419-1941
                                                 Fax: (312) 893-3851
                                                 todd@mcllegal.com

                                                 Joseph F. Centrich (*pro hac vice)*
                                                 jcentrich@cpctexaslaw.com
                                                 Lance C. Winchester (*pro hac vice*)
                                                 Clausen & Centrich, PLLC
                                                 2002 Timberloch Place, Suite 200
                                                 The Woodlands, Texas 77380
                                                 Tel: (281) 210-0140
                                                 Fax: (866) 901-7829
                                                 jcentrich@cpctexaslaw.com
                                                 lance@lancewlaw.com

## **CERTIFICATE OF SERVICE**

I, Todd L. McLawhorn, an attorney, hereby certify that the foregoing document was served on all counsel of record via the Northern District of Illinois ECF filing system, on November 18, 2013.

_____/s/_____
Todd L. McLawhorn