# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SCOTT DOLEMBA, on behalf of himself and a class, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) CASE NO. 1:13-cv-6939 ) ) JUDGE KENDALL ) |
| CITIZENS INFORMATION, ASSOCIATES, LLC; KYLE G. PRALL; RYAN H. RUSSELL; STAR NINE VENTURES, INC.; d/b/a STAR NINE MARKETING; and JOHN DOES 1-10, | ) MAGISTRATE JUDGE COLE ) ) ) ) ) ) ) |
| Defendants. | ) |

**DEFENDANT RYAN RUSSELL'S MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Defendant Ryan Russell ("Russell"), by and through his undersigned counsel, hereby submits this Memorandum in Support of his Motion to Dismiss for Lack of Personal Jurisdiction and in support thereof states as follows:

## I. INTRODUCTION

A fundamental question in every case is whether a court has personal jurisdiction over a party. If a court does not, then the party should be dismissed from the action pursuant to Fed. R. Civ. P. 12(b)(2). Here, Russell, an officer of Star Nine Ventures, Inc. ("SNV") – a Texas corporation with no connection to Illinois – is not subject to personal jurisdiction in this Court. Russell is not amenable to service under Illinois' long-arm statute and it would violate due process protections to subject Russell to the jurisdiction of this Court. Accordingly, for these

reasons more fully discussed below, Russell must be dismissed from this action pursuant to Fed. R. Civ. P 12(b)(2) for lack of personal jurisdiction.

## II. BACKGROUND AND JURISDICTIONAL FACTS

Plaintiff, Scott Dolemba, has a long history of filing class action lawsuits against various corporate entities before this Court. By Defendant's count, since November 2012, Plaintiff has filed 13 separate federal claims in the Northern District of Illinois, the majority of which are brought as class actions, and none of which have thus far been certified as a class.[1]

To that end, Plaintiff, on behalf of himself and all other members of a putative class, brings this action against four named defendants and "John Does" 1-10. [*See* Complaint, DE 1]. The putative class is alleged to be "all residents of Illinois whose booking photograph has been posted on one or more of defendants' websites, including BustedMugshots.com and MugshotsOnline.com." [DE 1 ¶38] Plaintiff alleges that Russell has violated Illinois's Consumer Fraud Act ("CFA") and Illinois's RICO statute - 720 ILCS 5/12-6.[2] The CFA claim is based not on any allegation that Plaintiff did not receive the service he contracted for with CIA, i.e. the removal of his record, but is based solely on an alleged violation of Illinois's intimidation (or extortion) statute.

---

[1] See, e.g., *Dolemba v. Allied Waste Transportation, Inc*. 1:13-cv-05508 (Jan. 2014) [70](settlement results in dismissal of individual claims with prejudice and putative class claims without prejudice); *Dolemba v. Liberty Power Corp*., LLC et al., 1:13-cv-05429 (Jan. 9, 2014)[27](same); *Dolemba v. Arnold Scott Harris, P.C*., 1:13-cv-05986 (Jan. 13, 2014) [47](same); *Dolemba v. Justmugshots.com Corp. et al*., 1:13-cv-07225 (Mar. 10, 2014)[35](same); *Dolemba v. Adzzup, Inc*., 1:13-cv-07832 (Dec. 17, 2013)[15](dismissed prior to class certification); *Dolemba v. Municipal Collection Services, Inc*., 1:14-cv-01264 (Mar. 12, 2014)[15](same).

[2] It should be noted that as well-known as publishers of arrest records are (the Illinois legislature amended the CFA to include section 815 ILCS 505/2QQQ, which outlaws the practice of charging for removals, effective January 1, 2014), the Illinois Attorney General has not elected to prosecute any such publishers.

The Complaint alleges that "Plaintiff had a booking photo taken in Cook County, Illinois." [DE 1 ¶23]. Sometime thereafter, "the photo was published on BustedMugshots.com." [DE 1 ¶24]. Plaintiff admits that Defendant "CIA operates the websites BustedMugshots.com and MugshotsOnline.com." [DE 1 ¶11]. Plaintiff then alleges that SNV "designed, created and operates the websites BustedMugshots.com and MugshotsOnline.com." [DE 1 ¶15].

In his Original Complaint, Plaintiff alleged, as a basis for both jurisdiction and liability, that Ryan Russell "is a manager of CIA and president and director of SNV." [DE 1 ¶18]. Plaintiff has made no specific allegations of any activities performed by Russell directed within or toward the state of Illinois. Since the Original Complaint, Plaintiff's claims have evolved, with Plaintiff now arguing that jurisdiction is proper over SNV because "SNV helps CIA reach its audience, including those in Illinois." [DE 48, p. 2]. Russell anticipates Plaintiff will make a similar pivot in his personal jurisdiction arguments here.

Plaintiff alleges that on September 12, 2013, he paid $98 through bustedmugshots.com to remove his record. [DE 1 ¶31]. Plaintiff has made no allegation that the removal was not performed. Plaintiff alleges that he was motivated to pay for the removal because "he feared being subjected to hatred, contempt, and ridicule as a result of" the publication. [DE 1¶33]. Plaintiff has made no allegation as to how any threat, if any, was communicated to him.

One of four named Defendants is Russell – a Texas individual with no connection to Illinois. Russell has no contacts or relationship within the state of Illinois. Russell does not own, rent or lease real property in Illinois, nor does he have any bank accounts in Illinois. (Russell Decl. ¶6). Russell does not conduct any business in Illinois. (Russell Decl. ¶6).

Russell has not engaged in any activities that relate in any way to Plaintiff's claims. Russell is the sole shareholder and president of SNV, which has provided limited website and

3

database development services on a contract basis for Citizens Information Associates, LLC, ("CIA"), a Texas limited liability company engaged in the business of publishing arrest and criminal information. (Russell Decl. ¶¶9, 13). SNV and CIA each follows corporate formalities such as holding regular meetings of the shareholders and its directors, having a company secretary responsible for maintaining statutory books and records, maintaining a registered agent for service of process as required by law, and filing annual tax returns. (Russell Decl. ¶5). All of these activities have been and continue to be conducted in Texas. (Russell Decl. ¶5).

SNV operates its business separate and apart from CIA, and Russell operates personally separate from both these entities. (Russell Decl. ¶11). None of the managers of CIA have any equity interest in SNV, nor do they serve as officers or employees in any capacity. (Russell Decl. ¶11). SNV operates a business primarily as a consultant, providing valuable search engine optimization services to clients or by providing marketing services to clients through affiliated websites. (Russell Decl. ¶4). Neither Russell nor SNV are engaged in the business of publishing arrest or criminal data in the state of Illinois, or any other state. (Russell Decl. ¶4).

Put simply, Russell has no contacts with the state of Illinois.

### III. ARGUMENT

#### A. Applicable Standard

A federal court has personal jurisdiction to the extent permitted by the law of the state in which it sits. *See Janmark, Inc. v. Reidy & Dreamkeeper, Inc*., 132 F.3d 1200, 1201 (7th Cir. 1997). Illinois law allows personal jurisdiction over a defendant to the same extent permitted by the U.S. Constitution. *See* 735 ILCS 5/2-209(c). Plaintiff must therefore at least show that Russell has "purposefully established 'minimum contacts' in [Illinois]" such that it is "not unreasonable to require [SNV] to submit to the burdens of litigation in [Illinois]." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-76 (1985).

4

## B. Russell is Not Amenable to Service Under Illinois's "Long-Arm" Statute

A defendant is amenable to service in Illinois only when the defendant "is subject to the jurisdiction of a court of general jurisdiction" under the Illinois "long-arm" statute. Fed. Civ. P. Rule 4(k)(1)(A). The burden of establishing personal jurisdiction lies squarely with Plaintiff. *Purdue Research Found. v. Sanofi–Synthelabo,* S.A., 338 F.3d 773, 782 (7th Cir.2003). Plaintiff alleged, as a basis for both jurisdiction and liability, that Ryan Russell "is a manager of CIA and president and director of SNV." [DE 1 ¶18]. Plaintiff has made no specific allegations of any activities performed by Russell directed within the state of Illinois. Since the Original Complaint, Plaintiff's claims have evolved, where Plaintiff now argues that jurisdiction is proper over SNV because "SNV helps CIA reach its audience, including those in Illinois." [DE 48, p. 2]. Russell anticipates Plaintiff will make the same arguments here.

Illinois's long-arm statute authorizes an Illinois court to exercise personal jurisdiction over a nonresident defendant and authorizes out-of-state service to effectuate that jurisdiction when the cause of action arises from the nonresident's "transaction of any business in this State" or "commission of a tortious act within this State." 735 ILCS 5/2-209.

For the purpose of long-arm jurisdiction, Illinois courts consider "who initiated the transaction, where the contract was entered into, and where the performance of the contract was to take place." *Ideal Ins. Agency, Inc. v. Shipyard Marine, Inc*., 213 Ill.App.3d 675, 157 Ill.Dec. 284, 572 N.E.2d 353, 357 (Ill.App.Ct.1991). "A defendant transacts business in Illinois when ***substantial*** performance of his or her contractual duties is to be rendered in Illinois." *First Nat. Bank of Chicago v. Boelcskevy*, 126 Ill.App.3d 271, 81 Ill.Dec. 380, 466 N.E.2d 1182, 1185 (Ill.App.Ct.1984) (emphasis added). Further, "[a] defendant does not transact business in Illinois merely by entering into a contract that involves an Illinois resident." *Liaquat Khan v. Van Remmen, Inc*., 325 Ill.App.3d 49, 258 Ill.Dec. 628, 756 N.E.2d 902, 910 (Ill.App.Ct.2001).

Contrary to Plaintiffs' claims, Russell has not engaged in any activity in the state of Illinois, much less transacted business within the state. Russell does not currently conduct business in Illinois, and Russell was not engaged in any business activities giving rise to this lawsuit directed at Illinois.

Apparently, Plaintiff's only justification for including Russell in the claim is because he owns an equity interest in SNV, and was once a manager of CIA.

Plaintiff has also alleged that SNV committed a tortious act directed at Illinois's residents. Under Illinois law, tortious acts must be aimed at a target in the forum state and *undertaken for the express purpose of causing injury* there to satisfy *Calder's* express-aiming requirement. *Tamburo v Dworkin,* 601 F.3d 693, 707 (7th Cir. 2010). The Court need not engage in a lengthy analysis of whether Russell engaged in targeted activity with the purpose to harm Plaintiff. Plaintiff has not alleged ***any*** facts to establish that Russell acted at all, much less with the **purpose** to injure Plaintiff in the state of Illinois. The only alleged actions that Plaintiff has alleged violate Illinois law involve the publication of arrest records and charging for their removal – activities that Russell does not, and has never, engaged in. (Russell Decl. ¶4).

By Plaintiff's own acknowledgment, it is CIA, not SNV or Russell, which committed the allegedly tortious conduct, and had contacts directed at Illinois. Specifically, Plaintiff correctly asserted that "the mugshot information published is that of an Illinois resident. It was obtained from an Illinois law enforcement agency and exists because of Illinois public records laws." [DE 46 p. 7] All actions related to the alleged tort (publishing the data and charging for removal) and contact with Illinois (the acquisition, selection, and publication of the data within Illinois) **were performed solely by CIA**. Plaintiff has alleged no facts that Russell participated in any activities that meet the above criteria.

### 1. Plaintiff's "But-For" Analysis is Legally Flawed.

Because of this lack of contact, Plaintiff creates a new standard which greatly expands personal jurisdiction beyond what is generally accepted by law. Plaintiff argues in his Response to SNV's Motion to Dismiss that "[w]ithout a functioning database and website, there would be no database of mushots [sic] <u>for which CIA could charge a removal, which is the very heart of Plaintiff's claim</u>." [DE 46 p.6] (emphasis added). Plaintiff admits that it is CIA that is performing the allegedly tortious activity within Illinois, yet still believes personal jurisdiction, and liability, are justified as to SNV on a "but-for" analysis that essentially argues that CIA could not have performed the allegedly tortious activity without a functioning website, which was built in part by SNV. Russell assumes Plaintiff will take this logic a step further, arguing that jurisdiction (and liability) is proper against Russell for owning the company that was hired to do the computer engineering that made it possible for CIA to commit the alleged tort.

As Plaintiff summarizes his argument:

"Thus, the communication is about an Illinois resident, obtained from Illinois law enforcement, through methods created as a product of Illinois law, and being directed into Illinois." [DE 48 p.3].

If one analyzes each claim individually, it is clear that personal jurisdiction is not warranted. Plaintiff complains that "the communication is about an Illinois resident," but has already admitted that it is CIA, not Russell, who "operates the websites" and "lists and posts on these websites information about residents of Illinois." [DE 46 pp.1-2]. Next, Plaintiff states that the information was "obtained from Illinois law enforcement." Plaintiff makes no allegation that Russell acquired these records from Illinois because he cannot – the records were obtained by CIA. (Russell Decl. ¶¶ 9-10.) Plaintiff continues, claiming that the records were obtained "through methods created as a product of Illinois law." That may be so, but that surely does not support the exercise of personal jurisdiction over Russell, who never exercised privileges under

7

that law to obtain any arrest records. Lastly, Plaintiff claims that the information was "being directed into Illinois," which Plaintiff has acknowledged is being done by CIA. [DE 46 pp.1-2]. None of these activities gives rise to personal jurisdiction over Russell. "[I]t is essential in each case that there be some act <u>by which the defendant purposefully</u> avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King,* 417 U.S. at 253 quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958).

Illinois courts agree, finding the focus should be "on whether the <u>plaintiff has alleged that the defendant 'is the author of the acts or omissions within the State</u>.'" *International Business Machines Corp. v. Martin Property & Casualty Insurance Agency, Inc.*, 281 Ill.App.3d 854, 859 (1996), quoting *Nelson v. Miller*, 11 Ill.2d 378, 393, 143 N.E.2d 673 (1957)(emphasis added). As noted above and admitted by Plaintiff, the "author" of all activities directed within Illinois and "at the very heart of Plaintiff's claim" is CIA. Plaintiff has made no claim that Russell was ever engaged in these activities.

**2. A Federal District Court Has Already Rejected Plaintiff's Interpretation.**

In the Middle District of Florida, the court has evaluated a near identical argument for the exercise of personal jurisdiction over the same defendants, Russell and SNV, and found such argument lacking merit. In *Bilotta v. Citizens Information Associates, LLC, et. al.*, 8:13-cv-02811 *4 (M.D.Fla. 2014) (submitted previously to this Court at Dckt. No. 50), the court noted in its findings of fact regarding Russell and SNV:

> In this case, Star Nine created the website pursuant to an oral contract which included programming that permitted users to search for specific mug shots by geographic location, including Florida. The programming also allowed CIA to download mug shots from publicly available websites and publish them on its website, operate a membership service, publish additional content for paid users including those within Florida, remove mug shots, and receive advertising revenue. <u>Essentially Star Nine created the crucial aspects of the programming that permits CIA to use the website to commit the torts as alleged in the complaint.</u>

8

> Russell's alleged liability stems from the fact that he is the president and one of two employees of Star Nine who entered into the contract and possibly created all or some of the programming. (emphasis added).

That is nearly identical to Plaintiff's arguments here. In evaluating whether such facts give rise to personal jurisdiction, the Court held:

> These facts are insufficient to allege that Star Nine or Russell committed a tort in Florida. To state a claim against Star Nine and Russell for misappropriation and violation of her right of publicity, Bilotta would have to show that Star Nine and Russell did more than just create the programming for the website. The cases allowing jurisdiction based on torts committed over the internet involve the owner and operator of the website engaging in the actual infringement, not the web designer or other party contracted to create the website. (emphasis added).

The exercise of personal jurisdiction (and liability) is improper over a party that performed services that were later used by a third party in an allegedly tortious manner. *See Burger King*, 471 U.S. at 474.

Defendant's activities do not fall within the reach of 735 ILCS 5/2-209 and service is therefore not authorized.

### C. The Exercise of Jurisdiction in Illinois Against Russell Would Violate Due Process.

Even if Russell were amenable to service in Illinois, the exercise of jurisdiction would violate due process because Russell does not have sufficient minimum contacts with Illinois such that the maintenance of this suit will not offend notions of "fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). Jurisdiction may be found to exist either generally, in cases in which a defendant's "continuous and systematic" conduct within the forum state renders that defendant amenable to suit in any lawsuit brought against it in the forum state, or specifically, in cases in which the subject matter of the lawsuit arises out of or is related to the defendant's contacts with the forum. *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir.1996).

**1. Russell is Not Subject to General Jurisdiction.**

General jurisdiction arises when a non-resident defendant's contacts with the forum state are "continuous and systematic." *Helicopteros Nacionnales de Columbia, S.A. v. Hall*, 466 U.S. 408, 415 (1984), *see also Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 713 (7th Cir.2002); *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1277 (7th Cir.1997). Based on the evidence provided in Mr. Russell's declaration, it is clear that neither he nor SNV has had continuous or systematic contacts with Illinois. (Russell Decl. ¶¶4-8).

Further, the constitutional requirement for general jurisdiction is "considerably more stringent" than that required for specific jurisdiction. *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 787 (7th Cir. 2003), citing *United States v. Swiss American Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir.2001) (internal quotation marks omitted). Since Russell has had such limited contact with Illinois, the exercise of general jurisdiction would be inappropriate.

**2. Russell is Not Subject to Specific Jurisdiction.**

In determining whether a court has specific jurisdiction, "the crucial federal constitutional inquiry is whether, given the facts of the case, the nonresident defendant has sufficient contacts with the forum state that the district court's exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The inquiry here must focus on whether it is fundamentally fair to require the defendant to submit to the jurisdiction of the court with respect to this litigation. *See International Shoe*, 326 U.S. at 316–17. The Supreme Court consistently has made it clear that, in employing this test, courts must focus on the factor of "foreseeability." The foreseeability that is significant for this purpose is whether the defendant could have anticipated being haled into the courts of the state with respect to the matter at issue. *See Burger King*, 471 U.S. at 474. Notably, <u>it must be</u>

the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other entity. *Id*.

### i. Plaintiff Cannot Satisfy His Burden to Establish That Russell Has Sufficient Minimum Contacts With Illinois.

We first address whether Russell has "minimum contacts" with Illinois. The test for "minimum contacts" fails on two grounds: (1) Russell has not purposefully directed any activities that relate to Plaintiff's claims, and (2) Russell has not "purposefully directed" any activities at Illinois residents.

The first factor is determining whether Russell purposefully availed himself of the privilege of acting in Illinois. "Purposeful availment" is present when the defendant's contacts with the forum state "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985), (quoting *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223 (1957)). The defendant's conduct and connection with the forum must be such that it "'should reasonably anticipate being haled into court there.'" *Id*. at 474, quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980).

As noted in great detail in Section III(B), the contacts with Illinois were all performed by CIA. The only "contact" alleged by Plaintiff against Russell is that he "met with law enforcement personnel while he was a manager of CIA to learn their needs and create products targeted toward those needs." [DE 46 p. 10, citing Russell Dep. 29:15-19]. Notably absent from this is any allegation that Russell met with any law enforcement officer from Illinois. Further, as Russell has noted, the project he was developing as a manager of CIA dealt with the development of a criminal tip-line, www.bustedtipline.com, which has nothing to do with the basis of this lawsuit. (Russell Decl. ¶12).

The only other justification Plaintiff has alleged is Russell's position as a shareholder and officer of SNV. Russell is the owner and officer of SNV, which provides computer engineering and consulting services to clients from its office in Texas. (Russell Decl. ¶4). Russell was a manager, but not an owner, of CIA. (Russell Decl. ¶12). Russell has never published any arrest or criminal data – in Illinois or anywhere else for that matter. (Russell Decl. ¶4).

Seventh Circuit law is clear—mere stock ownership is insufficient to establish personal jurisdiction over a shareholder. *See Judson Atkinson Candies, Inc. v. Latini–Hohberger Dhimantec et al*, 529 F.3d 371, 381 (7th Cir.2008) (citing *Plastic Film Corp. of Am., Inc. v. Unipac, Inc.*, 128 F.Supp.2d 1143, 1147 (N.D.Ill.2001) ("[T]he fact that a corporation has only one single shareholder is not proof that the corporation is the 'alter ego' of that shareholder."); *Melko v. Dionisio*, 219 Ill.App.3d 1048, 162 Ill.Dec. 623, 580 N.E.2d 586, 595 (Ill. App. Ct. 1991) (noting that "the mere allegation that [defendant] was a dominant or sole shareholder is insufficient to enable a court to disregard the separate corporate existence")); *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 944 (7th Cir.2000).

To be subject to personal jurisdiction due to his ownership, Plaintiff will have to show that CIA was an alter-ego of Russell. This he cannot do. Both SNV and CIA follow corporate formalities such as holding regular meetings of the shareholders (or members) and its directors, having a company secretary responsible for maintaining statutory books and records, maintaining a registered agent for service of process as required by law, and filing annual tax returns. (Russell Decl. ¶5).

In arguing for the exercise of personal jurisdiction over SNV, Plaintiff claims that corporate formalities were disregarded. To support his position, he claims 1) SNV and CIA shared office space for a period of time, 2) SNV paid expenses on behalf of CIA and was later

reimbursed for such amounts, and 3) there was no written contract governing SNV engineering services and there were no formal invoices between SNV and CIA. [DE 46 pg. 6]. Notably, Plaintiff provides no authority to support such a position.

First, sharing office space is commonplace in commercial leases, allowing smaller companies to share common expenses such as conference room and kitchen space, and thus reducing both companies' overhead. Next, Plaintiff alleges that SNV seeking reimbursement of expenses advanced on behalf of CIA shows a failure to observe corporate formalities. This is a bizarre argument, and it would seem that Plaintiff's concern over "where CIA stops and SNV begins" would have more merit had SNV not sought reimbursement for the expenses.[3] As it is, the fact that SNV was reimbursed by CIA supports the fact that the two entities are separate. Further, the size of the transaction has nothing to do with corporate formalities. Again, if credit was extended by SNV, and then paid by CIA, that does not in any way suggest a failure to observe corporate formalities. Lastly, Plaintiff asserts without authority that the absence of any formal contract or invoice suggests a failure to follow corporate formalities. Not having a written contract is commonplace, and has never been used to disregard the corporate entity.

Russell's status as a shareholder of SNV is insufficient to establish personal jurisdiction.

> ii. *The Exercise of Personal Jurisdiction over Russell Would Offend the Traditional Notions of Fair Play and Substantial Justice.*

The Court must then evaluate whether exercising jurisdiction would offend "traditional notions of fair play and substantial justice." Even assuming that facts supporting either general or specific jurisdiction are present, due process requires that the maintenance of personal

---

[3] Plaintiff continues this argument, claiming "[l]arge sums of money flowing back and forth without any accountability or explanation is not indicative of two separate entities." [DE 48 p.4]. It is unclear how Plaintiff can claim the money is moving "without any accountability" when he cites a transaction in the very same paragraph which he supported with an <u>accounting</u> record produced by CIA in discovery. CIA and SNV were clearly maintaining accounting records.

jurisdiction comports with the "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U. S. 310, 316 (1945). In determining the reasonableness of the exercise of jurisdiction "[a] court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 113 (1987).

A consideration of these factors reveals the unreasonableness of asserting personal jurisdiction over Russell. Here, there is significant burden on Russell, an individual, to defend himself in class action litigation. Russell is a Texas resident, with no connection to the forum. (Russell Decl. ¶¶4-8). The interest of Plaintiff is minimal, as he can proceed against CIA (as he has since the inception of this lawsuit) without including Russell. There is no benefit to be gained by Plaintiff in maintaining Russell as a party.

## IV. CONCLUSION

For these reasons, Defendant Ryan Russell's Motion to Dismiss for Lack of Personal Jurisdiction should be **GRANTED.**

DATED: April 21, 2014   By:  */s/ Joseph F. Centrich*

        Todd L. McLawhorn
        McLawhorn Law Offices, P.C.
        1 S. Dearborn, Suite 2100
        Chicago, IL 60603
        Tel: (312) 419-1941
        Fax: (312) 893-3851
        Email: todd@mcllegal.com

        Joseph F. Centrich (*pro hac vice)*
        Lance C. Winchester (*pro hac vice*)
        Clausen & Centrich, PLLC
        2002 Timberloch Place, Suite 200
        The Woodlands, Texas  77380
        Tel:  (281) 210-0140
        Fax: (866) 901-7829
        Email: jcentrich@cpctexaslaw.com
            lance@lancewlaw.com

## **CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ Pro 5(a), the undersigned certifies that a copy of the foregoing was served on all counsel of record via the Northern District of Illinois ECF filing system on April 21, 2014.

*/s/ Todd L. McLawhorn*
Todd L. McLawhorn