IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| SCOTT DOLEMBA, ON BEHALF OF HIMSELF AND A CLASS, | ) ) ) ) | |
| Plaintiff, | ) | No. 13 C 6939 |
| v. | ) ) | Judge Virginia M. Kendall |
| CITIZENS INFORMATION ASSOCIATES, LLC; KYLE G. PRALL; RYAN H. RUSSELL; STAR NINE VENTURES, INC.; d/b/a STAR NINE MARKETING; AND JOHN DOES 1-10, | ) ) ) ) ) ) | |
| Defendants. | | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Scott Dolemba, on behalf of himself and a purported class, brought the instant Complaint alleging that Defendants Citizen Information Associates, LLC ("CIA"), Star Nine Ventures, Inc. ("SNV"), Kyle G. Prall, Ryan H. Russell, and John Does 1-10 violated the Illinois Consumer Fraud Act by committing Intimidation as defined in 720 ILCS 5/12-6. Dolemba further alleges that the Defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") by operating CIA through a pattern of violations of 720 ILCS 5/12-6. Specifically, Dolemba argues that the Defendants committed extortion when they published embarrassing information about his arrest on the Internet and then obtained "fees" for the removal of that information. SNV now moves to dismiss the complaint against it individually pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. SNV contends that it does not maintain the minimum contacts necessary to be pulled into a court located in Illinois. For the reasons stated, SNV's motion is granted.

## BACKGROUND[1]

This action seeks relief for the alleged conduct of the defendants in publishing the names and photographs of individuals who had involvement with a state's criminal judicial process on certain websites. The defendants allegedly listed information purporting to be a statement of the allegations brought against the individuals.

Dolemba is a resident and citizen of Cook County, Illinois. (Doc. 1, Complaint ¶ 9). Dolemba had a booking photo taken in Cook County. (Compl. ¶ 23). CIA publishes crime-related information about a number of states, including Illinois, through its websites. (Doc. 28, Declaration of Ryan Russell ¶ 9). At some point, Dolemba's photo was published on "bustedmugshots.com," a website operated by CIA. (Compl. ¶s 11 and 24). CIA obtained this photo from law enforcement agencies in Illinois. (*Id.* at ¶ 16). Dolemba's booking image was indexed by "google.com" and appeared when searching Dolemba's name on the Internet. (*Id.* at ¶ 25).

CIA charges a monthly membership fee to individuals who want to view the booking photos displayed on "bustedmugshots.com." (*Id.* at ¶ 27). The fee is paid through the website. (*Id.* at ¶ 28). Further, individuals whose images are published on the website can remove their images pursuant to a "removal fee." (*Id.* at ¶ 30). On September 12, 2013, Dolemba paid $98 on the website to secure the removal of his photo. (*Id.* at ¶ 31). Dolemba alleges that he had no interest in completing a transaction through the website, but that he was compelled to in order to avoid embarrassment. (*Id.* at 33).

SNV is a Texas corporation with its principal place of business, registered agent, and office located in Texas. (*Id.* at ¶ 14). SNV provides search engine optimization consulting

---

[1] In deciding a motion to dismiss for lack of personal jurisdiction, the Court may consider evidence outside of the pleadings, including affidavits from the parties. *See Flag Co. v. Maynard*, 376 F. Supp.2d 849, 852 (N.D. Ill. 2005).

services and affiliate marketing programs to customers. (Russell Decl. ¶ 4). SNV does not have any customers in Illinois, but has done limited work for Illinois customers in the past. (*Id.*). SNV is not registered to do business in Illinois. (*Id.*). Dolemba alleges that SNV designed, created, and operates the websites at issue but SNV maintains that it plays no role in the publishing or maintenance of the websites. (Compl. ¶ 15; Russel Decl. at ¶ 9). SNV does, however, own an equity interest in CIA. (*Id.* at ¶ 10). Specifically, SNV had a 76.29% ownership interest in CIA. (Doc. 46-1, Deposition of Ryan H. Russell P. 44). SNV shared office space with CIA for a period of time. (Russell Dep. P. 13). SNV set up the payment portal by which CIA received online payments. (*Id.* at P. 32-33). SNV also paid expenses on behalf of CIA at points, but was reimbursed for those expenses. (*Id.* at P. 46-47).

## STANDARD OF REVIEW

When reviewing a motion to dismiss for lack of personal jurisdiction, the Court accepts all well-pleaded factual allegations in the complaint as true unless controverted by the defendant's affidavits. *See Turncock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987), *superseded on other grounds*. The plaintiff bears the burden of establishing personal jurisdiction when the defendant challenges it. *See Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). When affidavits submitted by the defendant create a factual dispute, all disputed facts are construed in the plaintiff's favor. *See Northern Grain Marketing, LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). Where, as here, the Court rules on a defendant's motion to dismiss based on the submission of written materials without holding an evidentiary hearing, the plaintiff "'need only make out a *prima facie* case of personal jurisdiction.'" *Id.* (quoting *Purdue Res Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). A federal court sitting in diversity has personal jurisdiction over a defendant only if the courts of the state in which it sits would have

personal jurisdiction. *See Daimler AG v. Bauman*, 134 S.Ct. 746, 753 (2014) ("Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons"); *See also RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997).

"A federal court borrowing a state jurisdictional statute may acquire personal jurisdiction only to the extent that the state law authorized service of process." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). The Illinois long-arm statute governs service of process in Illinois and "permits its courts to exercise jurisdiction on any basis permitted by the Illinois and United States constitutions." *See* 735 ILCS 5/2-209(c); *Hyatt*, 302 F.3d at 714. Due process requirements for jurisdiction under the Illinois Constitution parallel due process requirements for jurisdiction under the United State Constitution; therefore, the inquiry collapses into whether the exercise of jurisdiction over SNV would comport with the due process requirements of the federal Constitution. *See Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 940 (7th Cir. 2000); *accord Hyatt*, 302 F.3d at 714-716.

To satisfy the requirements of due process, SNV must have "minimum contacts" with Illinois and those minimum contacts must not offend "traditional notions of fair play and substantial justice." *See RAR*, 107 F.3d at 1275, *discussing International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). There exist two types of jurisdiction: general and specific. *See Hyatt*, 302 F.3d at 713, *discussing Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 (1984). General jurisdiction is proper only if SNV has "continuous and systematic" contacts with Illinois; if such contacts exist, the Court may exercise personal jurisdiction over SNV even if the case does not arise out of and is not related to SNV's forum contacts. *See Hyatt*, 302 F.3d at 713. Specific jurisdiction allows the Court to exercise jurisdiction over a defendant whose contacts with the forum state are limited but "the plaintiff's

cause of action [arises] out of or [is] related to these minimum contacts that sufficiently comport with fairness and justice. *See Central States*, 230 F.3d at 943.

## DISCUSSION

### A.  Internet Activity

Dolemba argues that SNV is subject to jurisdiction because it has, through CIA, specifically directed commercial activity in Illinois via the Internet. Although the issue of what type of Internet activity is sufficient to establish personal jurisdiction in a particular forum has yet to be fully determined by the Seventh Circuit, a jurisprudence of the necessary relationship has emerged at the district court level. *See Linehan v. Golden Nugget*, No. 05 C 7030, 2008 WL 4181743, at *5 (N.D. Ill. Sept. 5, 2008). Courts in this district have adopted a "sliding scale" approach that divides Internet activities into three categories: (1) those in which the defendant clearly transacts business in foreign jurisdictions over the Internet; (2) those in which a defendant has posted information on the internet, but has no further communication with potential customers via the Internet; and (3) those in which the defendant operates an interactive website that allows defendant and potential customers in foreign jurisdictions to communicate regarding defendant's goods or services. *See, e.g., Richter v. INSTAR Enterprises Int'l, Inc.*, 594 F. Supp.2d 1000, 1007-08 (N.D. Ill. 2009); *George S. May Int'l Co. v. Xcentric Ventures, LLC*, 409 F. Supp.2d 1052, 1058 (N.D. Ill. 2006); *Berthold Types v. European Mikrograf Corp.*, 102 F. Supp.2d 928, 932 (N.D. Ill. 2000); *Euromarket Designs Inc. v. Crate & Barrell, Ltd.*, 96 F. Supp.2d 824, 837-38 (N.D. Ill. 2000). This approach, first set out in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997), measures the likelihood that personal jurisdiction can be constitutionally exercised by the nature and quality of commercial activity that an entity conducts over the Internet. *See Richter*, 594 F. Supp.2d at 1007.

In this case, CIA's activity over the Internet is sufficient to confer personal jurisdiction to a court situated in Illinois. The websites operated by CIA, such as "bustedmugshots.com," allow potential customers to purchase services through the Internet in foreign states. This is the precise relationship described in group one of the sliding scale test outlined by *Zippo*. *See Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 549 (7th Cir. 2004) (the operation of an "interactive" website, such as one on which consumers can order the defendant's goods or services, may subject a defendant to the exercise of personal jurisdiction); *see also, e.g., George S. May Int'l*, 409 F. Supp.2d at 1059 (when defendant offers goods or services for purchase on a website accessible by consumers in a foreign state, personal jurisdiction is proper; *Berthold Types Ltd.*, 102 F. Supp.2d at 932 (courts can appropriately exercise personal jurisdiction over defendants who fall into the first category on the sliding scale by actively conducting business on the Internet). Dolemba himself secured the removal of his photograph by making a purchase on the website while situated in Illinois. Furthermore, Dolemba's mugshot was obtained through Illinois law enforcement agencies.

Although this Court can exercise personal jurisdiction over CIA under the sliding scale Internet activity test, neither SNV nor CIA is subject to general jurisdiction in Illinois. *See Abelesz v. OTP Bank*, 692 F.3d 638, 653 (7th Cir. 2012) (general jurisdiction only applies when defendant's contacts are such that the defendant is "essentially at home" in the forum state); *see also Richter*, 594 F. Supp.2d at 1008 (the operation of a fully interactive website confers specific, not general jurisdiction); *LaSalle Nat'l Bank v. Vitro, Sociedad Anonima*, 85 F. Supp.2d 857, 862-63 (N.D. Ill. 2000) (same). SNV has had one Illinois customer in its history, and SNV employees have traveled to Illinois once in the past. It maintains no contracts or relationships with Illinois citizens at present. *See Purdue*, 338 F.3d 773, 788 (general jurisdiction

requirements not satisfied when defendant corporation had entered into several contracts and had made a few visits to foreign state); *see, e.g., Richter*, 594 F. Supp.2d at 1006 (in order to expose itself to general jurisdiction of the courts of Illinois, a defendant's contacts must be intentional, continuous, and substantial rather than inadvertent, trivial, or sporadic and continue up to the time of suit). Moreover, the record contains absolutely no facts detailing how frequently Illinois residents conducted transactions with the websites. *See, e.g., Richter*, 594 F. Supp.2d at 1007 (where a defendant's sales in a state represent both a small percentage of a defendant's total sales and a small volume of sales overall, its contact with the forum state cannot be said to be substantial).

In determining whether SNV is subject to specific jurisdiction, the Court must determine whether the minimum contacts between SNV and Illinois demonstrate that SNV "purposefully availed itself of the privilege of conducting activities" in Illinois such that "it should reasonably anticipate being haled into court there." *See RAR*, 107 F.3d at 1277. The Court focuses its analysis on "the relationship among the defendant, the forum, and the litigation." *Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.*, 906 F.2d 276, 283 (7th Cir. 1990). CIA is subject to specific jurisdiction through operation of the complained of websites. It does not automatically follow, however, that SNV is subject to Illinois jurisdiction because of CIA's activity. The crux of the determination becomes whether or not SNV's corporate veil should be pierced.

### B. Corporate Veil Analysis

Although SNV maintained over a 76 percent ownership interest in CIA, it is a general principle of corporate law deeply "ingrained in our economic and legal systems" that a parent corporation is not liable for the acts of its subsidiaries. *See United States v. Bestfoods*, 524 U.S.

51, 61 (1998) (the exercise of the control which stock ownership gives to stockholders, such as the election of directors, the making of by-laws and the doing of all other acts incident to the legal status of stockholders does not create liability beyond the assets of the subsidiary). But there is an equally fundamental principle of corporate law, applicable to the parent-subsidiary relationship as well generally, that the corporate veil may be pierced and the shareholder held liable for the corporation's conduct when the corporate form would otherwise be misused to accomplish certain wrongful purposes, most notably fraud, on the shareholder's behalf. *See Bestfoods*, 524 U.S. at 62. This type of analysis is also applied to a personal jurisdiction determination. *See Central States, SE. & SW. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 940 (7th Cir. 2000) (Illinois courts exercise jurisdiction over parents on the activities of the subsidiary where the corporate veil can be pierced). Here, the alleged facts do not give rise to an inference of corporate domination and therefore, piercing SNV's corporate veil is unwarranted. *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 379 (7th Cir. 2008) (a party bringing a veil-piercing claim bears the burden of showing that the corporation is in fact a "dummy" or "sham" for another person or entity).

Personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary. *See Central States*, 230 F.3d at 943. Corporate ownership alone is not sufficient to exercise personal jurisdiction. In this case, Dolemba must have offered evidence tending to show that SNV dominated the activities of CIA such that CIA's conduct is appropriately attributed to SNV. *See id.* at 944 (where corporate formalities have been observed, a company's owners do not reasonably anticipate being hailed into a foreign forum to defend against liability for the errors of the corporation).

Dolemba argues that the basis for personal jurisdiction over SNV goes much farther than mere corporate ownership. Dolemba contends that because SNV shared office space with CIA for a period of time, SNV paid expenses on behalf of CIA and then was later reimbursed, and SNV and CIA did not exchange formal invoices or work orders, the corporate formalities between the entities were not maintained. Further, Dolemba states that because SNV provided services to CIA by conducting "engineering, database, and programming work," SNV is directly responsible for CIA's activity. None of these stances are persuasive.

First, the fact that SNV and CIA shared office space for a period of time in the past is not evidence of a failure to obey corporate formalities. *See, e.g., Hornsby v. Hornsby's Stores, Inc.*, 734 F. Supp. 302, 308 (N.D. Ill. 1990) (the fact that three corporations shared directors, office space, and office staff did not suggest that one entity was a mere instrumentality of the other corporations, nor did it indicate some fraud or injustice); *Summer Realty Co. v. Willcott*, 148 Ill. App.3d 497, 502 (5th Dist. 1986) (separate corporate status of two entities may not be disregarded merely because one owns the stock of the other or because the two share common officers or occupy the same office space). Dolemba's allegations in the present case are more sparse than those in *Hornsby* or *Willcott* as no evidence has been presented that SNV and CIA share office staff or maintain common corporate officers, even though that would not alter the Court's opinion. *See Bestfoods*, 524 U.S. at 62 (a duplication of some or all of the directors or executive officers of entities is not fatal to maintaining separate corporate statuses).

Second, Dolemba's argument that SNV did not maintain corporate formalities because it paid expenses on behalf of CIA and was later reimbursed is without merit. *See Wachovia Securities, LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 755 (7th Cir. 2012) (a secured insider loan is not "wrongful per se") (quoting *In re Lifschultz Fast Freight*, 132 F.3d 339, 345

(7th Cir. 1997). CIA produced a transactional record showing payments made by CIA to SNV for "expenses paid by [SNV] for the benefit of [CIA]." It is undisputed that SNV occasionally paid expenses on behalf of CIA and was later reimbursed for those payments. If anything, these records tend to show that SNV and CIA *were* operated as separate entities. *Contra Wachovia Securities, LLC v. Neuhauser*, 528 F. Supp.2d 834, 841-42 (N.D. Ill. 2007) (Kendall, J.) (no records reflecting payment from related entities regarding reimbursement for expenses precluded summary judgment). Because there has been no offer of materials tending to show that SNV fronted costs for CIA with no expectation of reimbursement, Dolemba's argument does not provide a basis for piercing the corporate veil.

Finally, Dolemba's arguments describing a lack of formal invoices and SNV's provision of services to CIA in an effort to attribute CIA's conduct to SNV are also unconvincing. Dolemba has offered no legal authority to substantiate either of these contentions, and this Court has been unable to find such. Even accepting these arguments as true, they do not provide a basis with which to pierce SNV's corporate veil. SNV is in the business of offering computer engineering, database maintenance, and programming services to clients looking to establish a presence on the Internet. SNV offers these services to the public at large, not solely to CIA. These services can include the creation of generic payment portals with which its clients can exact payments from their customers. Once SNV completes the programming work for a client, it exerts no discretion or control over what a website is used for or how it is operated. SNV plays no role in the day-to-day maintenance or publishing of "bustedmugshots.com." Because the services tendered to CIA by SNV involved only generic programming and engineering, this Court does not find that SNV dominated CIA such that personal jurisdiction would be proper.

*See Central States*, 230 F.3d at 945 (domination is necessary to find personal jurisdiction over a parent based on the actions of the subsidiary).

Additionally, SNV conducts business as a corporate entity distinct from CIA. SNV does not share directors or shareholders with CIA. SNV maintains statutory books, records, financial statements, and tax returns. SNV prepares and maintains accounts which are reviewed annually by certified public accountants in Texas. SNV never exercised day-to-day management control over CIA as it did not direct or control any element of the acquisition, selection, or publication of data on "bustedmugshots.com." Thus, the facts of this case do not demonstrate that SNV can be subjected to personal jurisdiction on the basis of its corporate affiliation with CIA.

## CONCLUSION

For the reasons stated above, SNV's motion to dismiss for lack of personal jurisdiction is granted.

Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date:  April 24, 2014